# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VICKY SMITH,<br><br>   Plaintiff<br><br>   v.<br><br>FREDERICK B. HENDRICKS, M.D., *et al.*,<br><br>   Defendants | Civil Action No. 15-1226 (CKK) |

## MEMORANDUM OPINION
(October 22, 2015)

Plaintiff Vicky Smith brought this action in the District of Columbia Superior Court against Defendants Dr. Frederick Hendricks, Medical Faculty Associates, Inc.,[1] and Boston Scientific in relation to injuries that she allegedly suffered after she was implanted with the "Advantage Transvaginal Mid-Urethral sling system." Compl. ¶ 27. Defendant Boston Scientific subsequently removed the case to this Court. Plaintiff brings medical malpractice claims against MFA and against Dr. Hendricks (collectively, the "Healthcare Provider Defendants") and product liability claims against Boston Scientific. Presently before this Court are the Healthcare Provider Defendants' [8] Motion to Dismiss; the Healthcare Provider Defendants' [11] Motion to Sever Claims Against Them and Remand Said Claims to D.C. Superior Court; Plaintiff's [16] Motion to Remand the Case Back to the Superior Court of the District of Columbia; and Boston Scientific's [12] Motion to Stay All Proceedings Pending Transfer to MDL No. 2326. In essence, Plaintiff seeks to have the *entire case* remanded to the Superior Court; by contrast, all of the defendants argue that the claims against the Healthcare Provider Defendants should be severed and remanded to the Superior Court (insofar as this Court does not dismiss them) while the

---

[1] Although Plaintiff refers to MFA as "Medical Faculty Associate, Inc.," (in the singular) in her Complaint, Defendant MFA refers to itself as "Medical Faculty Associate*s*, Inc.," (in the plural) and that is consistent with the caption of this case. Accordingly, the Court refers to this defendant as "Medical Faculty Associate*s*, Inc."

claims against Boston Scientific remain in federal district court. Meanwhile, Boston Scientific has requested that the Panel on Multi-District Litigation transfer this case to the Southern District of West Virginia as part of the multi-district litigation pending there, under the caption *In re Boston Scientific Corp. Pelvic Repair System Products Liability Litigation* (MDL No. 2326), and has moved to stay the proceedings in this Court pending transfer to the Southern District of West Virginia.

The key threshold question is whether the Court has jurisdiction over this action in the first instance. In particular, the question is whether the citizenship of the Healthcare Provider Defendants can be disregarded for the diversity analysis in light of Defendants' arguments that they were either fraudulently or improperly joined. The Court's resolution of the other issues in the pending motions follows from its analysis of the jurisdictional question. The Court concludes that, although none of the Defendants were fraudulently joined, the claims against the Healthcare Provider Defendants were not properly joined to the claims against Boston Scientific. The Court concludes that it is proper to sever the claims against the Healthcare Provider Defendants and sever those Defendants, pursuant to Rule 21, preserving jurisdiction over the claims against Boston Scientific. Because the Court does not have jurisdiction over the claims against the Healthcare Provider Defendants, the Court holds in abeyance those defendants' motion to dismiss and remands that motion and the associated claims to the Superior Court. Therefore, upon consideration of the pleadings,[2] the relevant legal authorities, and the record for purposes

---

[2] The Court's consideration has focused on the following documents:

- Defendant Boston Scientific's Notice of Removal of Civil Action ("Notice of Removal"), ECF No. 1; *id*., Ex. 1 (Plaintiff's Complaint) ("Compl."), ECF No. 1-1;
- Defs.' Dr. Hendricks and MFA's Mot. to Dismiss ("Mot. to Dismiss"), ECF No. 8; Pl.'s Opp'n to Mot. to Dismiss, ECF No. 23; Healthcare Provider Defs.' Reply to Mot. to Dismiss, ECF No. 20;

of this motion, the Court HOLDS IN ABEYANCE and REMANDS the Healthcare Provider Defendants' [8] Motion to Dismiss for the District of Columbia Superior Court to decide that motion; GRANTS the Health Care Provider Defendants' [11] Motion to Sever Claims Against Them and Remand Said Claims to D.C. Superior Court; and DENIES Plaintiff's [16] Motion to Remand the Case Back to the Superior Court of the District of Columbia. The Court SEVERS the claims against the Healthcare Provider Defendants, SEVERS those defendants as parties, and REMANDS those claims back to the Superior Court. Having done so, the Court GRANTS Boston Scientific's [12] Motion to Stay All Proceedings Pending Transfer to MDL No. 2326 and STAYS this action until further order of the Court.

## I. BACKGROUND

For the purposes of the motions before the Court, the Court accepts as true the well-pleaded allegations in Plaintiff's Complaint. The Court does "not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014). The Court limits its presentation of the background to the facts relevant to the issues discussed below.

---

- Defs.' Dr. Hendrick's and MFA's Defendants' Motion to Sever Claims Against Them and Remand Said Claims to D.C. Superior Court ("Mot. to Sever"), ECF No. 11; Pl.'s Opp'n to Mot. to Sever, ECF No. 17; and Healthcare Provider Defs.' Reply to Mot. to Sever, ECF No. 21;
- Plaintiff's Motion to Remand the Case Back to the Superior Court of the District of Columbia ("Mot. to Remand"), ECF No. 16; Def. Boston Scientific's Mem. of Points & Auth. in Opp'n to Mot. to Remand ("Boston Scientific's Opp'n to Mot. to Remand"), ECF No. 22;
- and Boston Scientific's Motion to Stay All Proceedings Pending Transfer to MDL No. 2326 ("Mot. to Stay"), ECF No. 12.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

Boston Scientific produces, designs, researches, distributes, sells, and promotes the Advantage Transvaginal Mid-Urethral Sling System ("Advantage"), which consists of implanted surgical mesh devices, as a treatment for pelvic organ prolapse and stress urinary incontinence. Compl. ¶ 14. On October 20, 2008, the U.S. Food and Drug Administration ("FDA") issued a Public Health Notification to health care practitioners regarding adverse events relating to mesh products that had been reported to the FDA. *Id.* ¶ 61. On July 13, 2011, the FDA updated its Public Health Notification regarding "serious complications associated with surgical mesh for transvaginal mesh." *Id.* ¶ 62. Although the FDA did not address specific manufacturers or brand names in its Public Health Notification, the FDA Manufacturers and User Facility Device Experience database includes hundreds of injury reports arising from Advantage implants. *Id.* ¶ 64. Boston Scientific continued to promote Advantage and continues to claim that its reformed model Advantage Fit System provides safe and effective alternatives to other treatments. *Id.* ¶ 71. Boston Advantage has not included warnings or adverse event disclosures on its web page or brochures for the Advantage Fit System. *Id.* ¶ 72. Plaintiff further alleges that Boston Scientific knew or should have known that Advantage was defective, *id.* ¶ 65, and that Boston Scientific failed to disclose complications and adverse events arising from the use of Advantage, *id.* ¶ 70.

Meanwhile, on April 9, 2012, Plaintiff was referred to Medical Faculty Associates with complaints of recurrent urinary tract infections and stress urinary incontinence. *Id.* ¶ 18. After several initial tests and consultation with Dr. Hendricks, *id.* ¶¶ 19-21, Dr. Hendricks performed surgery on Plaintiff on June 21, 2012, including a cystoscopy and implanting the Advantage sling system, *id.* ¶ 27. While Dr. Hendricks recorded in Plaintiff's medical records that he had a thorough discussion with Plaintiff prior to the operation, Plaintiff alleges that she did not receive an explanation and that they did not have any discussion. *Id.* ¶¶ 22-23. Plaintiff maintains that

4

she did not receive any literature other than a "simple consent form," and that she never received any information regarding complications with the use of the mesh device. *Id.* ¶¶ 23, 25. Plaintiff began experiencing full scale abdominal pain on June 23, 2012, *id.* ¶ 28, and additional complications and adverse events followed, including continuous post-menopausal bleeding and sever lower back pain, *id.* ¶ 33. After receiving subsequent treatment and surgery at Providence Hospital in 2013, *id.* ¶¶ 33-39, Plaintiff was seen again by Dr. Hendricks during April and May 2014, *id.* ¶¶ 40-44. Subsequently, Plaintiff continued to suffer adverse health effects and was treated by other medical practitioners, including surgery that was conducted by those practitioners. *See id.* ¶¶ 45-55.

Plaintiff filed the Complaint in the District of Columbia Superior Court on June 22, 2015—which Boston Scientific subsequently removed to this Court—bringing claims in connection with medical complications that allegedly resulted from medical procedures that Defendant Dr. Frederick Hendricks performed on Plaintiff, including implanting the Boston Scientific Advantage Transvaginal Mid-Urethral sling system. Plaintiff brings claims for medical negligence (count I) and lack of informed consent (count II) against Dr. Hendricks and against Medical Faculty Associates, the medical practice of which Dr. Hendricks is an employee or agent. *Id.* ¶¶ 76-77. Plaintiff brings claims against Boston Scientific for negligent manufacture of a defective product (count III), breach of duty to warn (count IV), negligent product design (count V), breach of implied warranty of merchantability (count VI), breach of implied warranty of fitness for a particular purpose (count VII), breach of express warranty (count VIII), fraudulent misrepresentation (count IX), and fraud by concealment (count XI). In addition, Plaintiff also brings a claims for violation of the D.C. consumer protection statutes against both Dr. Hendricks and Boston Scientific (count X). In addition to the damages that Plaintiff seeks

with respect to the individual claims, Plaintiff seeks punitive damages from all defendants (count XII). Defendant Boston Scientific filed the [1] Notice of Removal on July 29, 2015, and the motions that are now pending before the Court were subsequently filed and briefed.

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction" and can adjudicate only those cases entrusted to them by the Constitution or an Act of Congress. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A defendant has the right to remove to federal court an action brought in state court where the federal court has original subject matter jurisdiction, including when it has jurisdiction on the basis of diversity of citizenship. 28 U.S.C. § 1441(a). Diversity jurisdiction exists when the action involves citizens of different states, and the amount in controversy exceeds $75,000.00 per plaintiff, exclusive of interest and costs. 28 U.S.C. § 1332(a). "When a plaintiff sues more than one defendant in a diversity action, the plaintiff must meet the requirements of the diversity statute for *each* defendant or face dismissal." *Newman-Green, Inc. v. Alfonzo-Larrain,* 490 U.S. 826, 829 (1989) (citing *Strawbridge v. Curtiss,* 7 U.S. 267, 3 Cranch 267, 267 (1806)); *see also In re Lorazepam & Clorazepate Antitrust Litig.,* 631 F.3d 537, 542 (D.C. Cir. 2011) (describing origin of complete diversity requirement). Courts must strictly construe removal statutes, resolving any ambiguities regarding the existence of removal jurisdiction in favor of remand. *See Williams v. Howard Univ.,* 984 F. Supp. 27, 29 (D.D.C. 1997) (citing *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 107-09 (1941)).

## III. DISCUSSION

The Court first considers whether there is diversity jurisdiction over this action under 28 U.S.C. § 1332(a). The Court next considers whether Defendant Boston Scientific, who removed the action to this Court under the general removal statute, 28 U.S.C. § 1441(a), properly

complied with the requirements of the removal statute, specifically with respect to the forum

defendant rule and with respect to the requirement that properly joined defendants join in or

consent to the removal. *See* 28 U.S.C. § 1441(b)(2) (forum defendant rule); *id.* § 1446(b)(2)(A)

(consent requirement). The Court lastly considers the Healthcare Provider Defendants motion to

dismiss and Boston Scientific's request to stay this action.

## A.  Diversity Jurisdiction

Plaintiff argues that this Court does not have subject matter jurisdiction over this action

because there is not complete diversity among the parties. Defendant Boston Scientific argues

that there is subject matter jurisdiction because the citizenship of the Healthcare Provider

Defendants should be disregarded because those parties were misjoined (that is, improperly

joined). The Healthcare Provider Defendants argue that there is no subject matter jurisdiction

over the claims against them and that the claims against them should be severed and remanded to

the D.C. Superior Court because they were improperly joined to the claims against Boston

Scientific. All of the defendants argue that, even if the Court determines that joinder is proper,

the Court should exercise its discretion under Rule 21 to sever the claims against the Healthcare

Provider Defendants, remand those claims to the D.C. Superior Court, and exercise jurisdiction

over the claims against Boston Scientific.

" 'The usual rule is that removability is determined from the record before the court at

the time the notice of removal ... is filed in federal court.' " *Henok v. JPMorgan Chase Bank,*

*N.A.*, No. CV 12-0292 (PLF), 2015 WL 2121788, at *3 (D.D.C. May 6, 2015) (quoting 14B

Charles Alan Wright *et al.*, Fed. Prac. & Proc. Juris. § 3723, at 690 (4th ed. 2009)). "In addition,

'[a] large minority of courts require complete diversity not only when removal is sought, but also

when the original action is filed in the state court.' " *Id.* (quoting 13E Charles Alan Wright,

Arthur R. Miller & Edward H. Cooper, Fed. Prac. & Proc. Juris. § 3608, at 357-58 (3d ed. 2009)). The question in this case is whether an exception to that usual rule is applicable. Before addressing the parties' legal arguments, the Court notes that there are no factual disputes underlying the question of diversity jurisdiction.[3] There is no question that, if all of the defendants are considered for the diversity analysis—whether based on their citizenship at time the complaint was filed in D.C. Superior Court, the time of the notice of removal, or at present— the parties are not diverse: MFA and Dr. Hendricks are citizens of Washington, D.C., as is Plaintiff. Compl. ¶¶ 3-6. Boston Scientific is the only party alleged not to be a citizen of Washington, D.C.; it is a Delaware corporation with is principal place of business in Massachusetts and is, therefore, a citizen of those two states. Notice of Removal ¶ 6. Similarly, it is clear that, if the citizenship of the Healthcare Provider Defendants is disregarded—as Defendants advocate—there would be diversity: Plaintiff is a citizen of Washington, D.C., and Boston Scientific is not. Therefore, the key jurisdictional question is whether the citizenship of MFA and Hendricks should be disregarded for the purposes of determining the diversity of the parties.

Altogether, Defendants suggest three possible bases for disregarding the citizenship of the Healthcare Provider Defendants in determining whether there is complete diversity among the parties: that the Healthcare Provider Defendants were fraudulently joined to this action; that the claims against those defendants were misjoined (or improperly joined) to the claims against Boston Scientific and must be severed pursuant to Rule 21; and that, in the alternative, the Court should exercise its discretion to sever the claims against the Healthcare Provider Defendants in

---

[3] With respect to the question of proper joinder, there are disputes regarding the nature of the claims.

order to exercise diversity jurisdiction over the claims against Boston Scientific. The Court notes

at the outset that, despite some lack of precision in the language the parties use to discuss

misjoinder and fraudulent joinder, the Court concludes that fraudulent joinder and misjoinder are

distinct bases for disregarding the citizenship of a nondiverse defendant, with a separate analysis

required for each of those bases. *See Kips Bay Endoscopy Ctr., PLLC v. Travelers Indem. Co.*,

No. 14 CIV. 7153 ER, 2015 WL 4508739, at *5 (S.D.N.Y. July 24, 2015); *In re Rezulin Products*

*Liab. Litig.*, 168 F. Supp. 2d 136, 142 (S.D.N.Y. 2001). The Court addresses, in turn, the

potential bases for disregarding the citizenship of the Healthcare Provider Defendants.

### 1. Fraudulent Joinder

"The fraudulent joinder doctrine allows the Court to 'disregard, for jurisdictional

purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case,

dismiss the nondiverse defendants, and thereby retain jurisdiction.' " *Walter E. Campbell Co. v.*

*Hartford Fin. Servs. Grp., Inc.*, 959 F. Supp. 2d 166, 170 (D.D.C. 2013) (quoting *Mayes v.*

*Rapoport,* 198 F.3d 457, 461 (4th Cir. 1999)). While the D.C. Circuit Court of Appeals has not

addressed the scope or existence of the fraudulent joinder doctrine, other district judges within

this district have applied this doctrine. *See, e.g.*, *id.*; *Boyd v. Kilpatrick Townsend & Stockton,*

*LLP*, 79 F. Supp. 3d 153, 157 (D.D.C. 2015); *In re Tobacco/Governmental Health Care Costs*

*Litig.*, 100 F. Supp. 2d 31, 39 (D.D.C. 2000). "In assessing a claim of 'fraudulent joinder,' the

removing party bears the burden of proving that, either '(1) there is no possibility the plaintiff

can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently

pled jurisdictional facts to bring the ... defendant into state court.' " *In re Tobacco/Governmental*

*Health Care Costs Litig.,* 100 F. Supp. 2d at 39 (quoting *Crowe v. Coleman,* 113 F.3d 1536, 1538

(11th Cir. 1997); *see also Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993)

(citing *B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir. 1981)) (same standard). The Court concludes that neither of these prongs is satisfied in this case.

The Court begins with the second prong: in this case, there is no suggestion that Plaintiff has "fraudulently pled jurisdictional facts." There is no dispute regarding the actual citizenship of the parties, and the parties acknowledge that, if the citizenship of all parties is considered, complete diversity is absent from this case. Next, the Court turns to the question of whether there is "no possibility the plaintiff can establish a cause of action against the resident defendant"—in other words, whether there is no possibility that Plaintiff's claims against the Healthcare Provider Defendants can succeed. Importantly, it is unclear whether the Defendants, in fact, press this argument. Nowhere does Boston Scientific explicitly lay out this argument despite its references to cases discussing fraudulent joinder. In the Healthcare Provider Defendants' motion to dismiss, they argue that the Court should dismiss all claims against them. While the Healthcare Provider Defendants do not explicitly link those arguments to their argument that they were fraudulently joined as defendants, the Court briefly considers this prong of the fraudulent joinder doctrine in the interest of completeness and because of the interrelated nature of the arguments in the motions pending before the Court.

The Healthcare Provider Defendants argue, in their motion to dismiss, that this Court has no subject matter jurisdiction over the claims against them because Plaintiff failed to comply with the 90-day pre-suit notice requirement for medical malpractice claims under the D.C. Code.[4] *See* D.C. Code § 16–2802(a) ("Any person who intends to file an action in the court

---

[4] While Plaintiff argues that non-compliance with the notice requirement strips this Court of subject matter jurisdiction, it is far from clear that the notice requirement itself is jurisdictional rather an element of a medical malpractice claim pursuant to D.C. law. *Compare Lacek v. Washington Hosp. Ctr. Corp.*, 978 A.2d 1194, 1196 (D.C. 2009) (affirming dismissal for lack of

alleging medical malpractice against a healthcare provider shall notify the intended defendant of his or her action not less than 90 days prior to filing the action."). The Healthcare Provider Defendants acknowledge that trial courts are "authorized … to waive § 16–2802(a)'s notice requirement whenever such a waiver is in the interests of justice." *Lewis v. Washington Hosp. Ctr.*, 77 A.3d 378, 382 (D.C. 2013). With respect to this provision, the posture in which the Court considers the Healthcare Provider Defendants' argument for dismissal is important. Given the discretion given to trial courts to waive the notice provision, the Court cannot conclude that there is "no possibility the plaintiff can establish a cause of action against" those defendants. *In re Tobacco/Governmental Health Care Costs Litig.,* 100 F. Supp. 2d at 39. Therefore, the Court has no need to consider the merits of the parties' arguments regarding the appropriateness of such a waiver; the discretion associated with such a waiver necessarily means that there is *some* "possibility" of success on Plaintiff's claims against the Healthcare Provider Defendants. While the Healthcare Provider Defendants also argue, in their motion to dismiss, that the Complaint fails to state a claim with respect to the D.C. Consumer Protection Procedures Act claim and the punitive damages claim, the Court need not tarry long with respect to this argument. Even if those arguments both succeeded, these arguments would not undermine Plaintiff's other claims. Even if those arguments succeeded, the Court still could not conclude that there was no possibility of success on the claims against the Healthcare Provider Defendants. Accordingly, the Court finds that the Healthcare Provider Defendants were not fraudulently joined, and the Court cannot disregard their citizenship on this basis.

---

subject jurisdiction without discussion of jurisdictional nature of notice requirement) *with Lewis v. Washington Hosp. Ctr.*, 77 A.3d 378, 382 (D.C. 2013) (suggesting the possibility that notice requirement could be waived by the parties).

### 2. Misjoinder[5]

Under Federal Rule of Civil Procedure 20, multiple defendants may be joined in one action if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). "Misjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Instead, a "court may at any time, on just terms, add or drop a party." *Id.* "The court may also sever any claim against a party." *Id.* " '[I]t is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered." *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 572-73 (2004) (quoting *Newman-Green,* 490 U.S. at 832). The Healthcare Provider Defendants argue—and Boston Scientific concurs—that they (and the claims against them) were improperly joined with the claims against Boston Scientific. Defendants argue that neither prong of Rule 20(a) is satisfied: that the claims against the Healthcare Provider Defendants do not arise out of the same "transaction, occurrence or series of transactions or occurrences" as the claims against Boston Scientific and that there are not common questions of law or fact between the two groups of claims. Plaintiff primarily responds to Defendants' joinder arguments by arguing that this Court has no jurisdiction over the case and, therefore, no occasion to consider the propriety of the joinder of the parties and the claims. However, as explained above, the Court concludes

---

[5] Because the relevant D.C. Superior Court rules are identical to the relevant Federal Rules of Civil Procedures, it is immaterial whether the Federal Rules or the Superior Court Rules are applied to determine whether joinder is proper. *See* D.C. Sup. Ct. Rules of Civil Procedure, Comment to Rule 20 ("Identical to Federal Rule of Civil Procedure 20 except for deletion of reference to admiralty process in the 2nd sentence of section (a) thereof."); *id.*, Comment to Rule 21 ("Identical to Federal Rule of Civil Procedure 21."). Therefore, the Court references the Federal Rules of Civil Procedure, as the parties have done, for the sake of simplicity.

that it is proper—and necessary—to consider the joinder issues in order to determine whether the Court can exercise jurisdiction over this case. Plaintiff also responds that both prongs of the Rule 20(a)(2) are satisfied with respect to the claims in the Complaint.

The Court turns to the first prong of the standard under Rule 20(a)(2)—whether the relief asserted against the defendants "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2)(A). Plaintiff claims that this prong is satisfied because Dr. Hendricks implanted the device produced by Boston Scientific during the surgery he performed on Plaintiff. *See* Pl.'s Opp'n to Defs.' Mot. to Sever at 5. Plaintiff further claims that "the presence of mesh device in the body of the Plaintiff is a direct function of the manufacture and distribution of the device to Defendants Hendricks and MFA for use in the surgery performed on Plaintiff." *Id.* Defendants argue that the claims against the Healthcare Provider Defendants arise out of different transactions or occurrences—specifically, the care and treatment of Plaintiff for urological complaints—than the claims against Boston Scientific—which arise out of Boston Scientific's research, testing, and disclosure of information relating to the Advantage system. The Court agrees with the Healthcare Provider Defendants. It is immaterial that the claims are linked, in some sense, as Plaintiff claims: if Boston Scientific had never manufactured the Advantage system, Dr. Hendricks could never have performed surgery on Plaintiff that entailed implanting the Advantage system. However, the applicable test for joinder requires more. The question is whether Plaintiff seeks relief from the several defendants "arising out of the same transaction, occurrence, or series of transactions or occurrences." The Court concludes that the Complaint does not meet this standard. Count I and II are brought against the Healthcare Provider Defendants on the basis of the events surrounding their treatment of Plaintiff. Counts III through IX and Count XI are brought against Boston

13

Scientific on the basis of products liability, including claims regarding alleged defectiveness of the Advantage system and claims regarding the failure of Boston Scientific to disclose adverse information regarding the Advantage System. The only substantive claim[6] brought against one of the Healthcare Defendants and against Boston Scientific is Count X, involving a claim for violation of the D.C. consumer protection statutes against both Dr. Hendricks and Boston Scientific, which alleges that neither defendants informed her fully or provided an alternative that would allow her to make an informed decision about her medical treatment. Compl. ¶ 142. The claims against Boston Scientific, which pertain to products liability, do not arise out of the same transactions or occurrences as the claims against the Healthcare Provider Defendants, which relate to medical malpractice by those defendants treating Plaintiff. The fact that Plaintiff claims that both the Healthcare Provider Defendants and Boston Scientific should have provided additional information to her regarding the Advantage system does not change this conclusion. Plaintiff's interactions—or lack thereof—with Boston Scientific and with the Healthcare Provider Defendants are wholly distinct. The factual basis for the claims against Boston Scientific pertains to the research, development, production, and marketing of the Advantage system; the factual basis for the claims against the Healthcare Provider Defendants pertains to Plaintiff's treatment by and interaction with her healthcare providers. Accordingly, the Court concludes that Complaint does not satisfy the requirements of the first prong of Rule 20(a)(2) with respect to the claims against the Healthcare Provider Defendants.

---

[6] A punitive damages claim, Count XII, is brought against all defendants, but the allegations under the claim only reference Boston Scientific. Specifically, although the heading for Count XII states that it is brought "AGAINST All Defendants," Plaintiff only "prays for judgment against Boston Scientific for $6000000.00 (six million dollars) for ruthless and wanton behavior to promote the mesh device to implant into Ms. Smith's body." Compl. ¶ 153. Plaintiff does not, under Count XII, seek punitive damages from any of the other defendants.

Indeed, this conclusion accords with that of several other district courts that have considered the propriety of joinder in cases where medical malpractice claims were joined with product liability claims. *See, e.g.*, *In re Stryker Rejuvenate & ABG II Hip Implant Products Liab. Litig.*, No. CIV. 13-1811 DWF/FLN, 2013 WL 6511855, at *4 (D. Minn. Dec. 12, 2013) ("The joinder of any malpractice, negligence, or misrepresentation claim against the Hospital Defendants with the other product liability claims (that are properly asserted against the device manufacturer) is inappropriate because the claims do not both involve common questions of law or fact and assert joint, several, or alternative liability 'arising out of the same transaction, occurrence, or series of transactions or occurrences.'") (quoting Fed. R. Civ. P. 20(a)); *Hughes v. Sears, Roebuck & Co.*, No. CIV.A. 2:09-CV-93, 2009 WL 2877424, at *6 (N.D.W. Va. Sept. 3, 2009) (concluding that product liability claims were improperly joined to medical malpractice claims); *Sutton v. Davol, Inc.*, 251 F.R.D. 500, 505 (E.D. Cal. 2008) (same); *In re Guidant Corp. Implantable Defibrillators Products Liab. Litig.*, No. CIV 07-1487 DWF/AJB, 2007 WL 2572048, at *2 (D. Minn. Aug. 30, 2007) (medical malpractice claim improperly joined to products liability claim because claims did not arise from same transaction or occurrence). *But see, e.g.*, *Stephens v. Kaiser Found. Health Plan of the Mid-Atl. States, Inc.*, 807 F. Supp. 2d 375, 383 (D. Md. 2011) (concluding that medical malpractice claims arose out of same transaction or occurrence as products liability claim).

Because the Court concludes that the claims against Boston Scientific do not arise out of the same transaction, occurrence, or series of transactions or occurrences as the claims against the Healthcare Provide Defendants, the Court concludes that the defendants are improperly joined in this case, and the Court need not consider Defendants' additional argument that there

are no common questions of law or fact between the claims against Boston Scientific and the claims against the Healthcare Provider Defendants.

Under Rule 21, the Court may sever any party if "they are not indispensable and if there would be no prejudice to the parties." *In re Lorazepam & Clorazepate Antitrust Litig.*, 631 F.3d at 542; *see also* Fed. R. Civ. P. 21. Given that there is no basis for permissive joinder of the claims against the Healthcare Provider Defendants, it is necessarily true that the Healthcare Provider Defendant are not necessary (or "indispensable," according to the former language of the rules) parties who must be joined pursuant to Rule 19 in order for this action to proceed. Indeed, there would be no basis for the Court to conclude that, without the Healthcare Provider Defendants, "the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). Nor would the Court have any basis to conclude that the Healthcare Provider Defendants "claim[] an interest relating to the subject of the action and is so situated that disposing of the action in [their] absence may … (i) as a practical matter impair or impede [their] ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B). Finally, Plaintiff has not identified any prejudice to severing and remanding the claims against the Healthcare Provider Defendants to the D.C. Superior Court while the claims against Boston Scientific are litigated in federal court. Therefore, pursuant to Rule 21, the Court severs the claims against the Healthcare Provider Defendants and remands those claims and defendants to the D.C. Superior Court. *See In re Lorazepam & Clorazepate Antitrust Litig.*, 631 F.3d at 542.

Under "the fiction that Rule 21 relates back to the date of the complaint [,] the court may proceed as if the nondiverse parties were never part of the case." *Id.* (citation omitted).

Accordingly, by disregarding the presence of the Healthcare Provider Defendants and their citizenship, there is complete diversity between Plaintiff and Boston Scientific, and the Court has subject matter jurisdiction over the remaining claims and parties in this case pursuant to 28 U.S.C. § 1332. Finally, because the Court concludes that it has subject matter jurisdiction over this case as a result of the conclusion that the Healthcare Provider Defendants were misjoined, the Court need not determine whether it would exercise its discretion under Rule 21 to sever the claims, absent misjoinder, merely to preserve jurisdiction against Boston Scientific.[7] *See In re Lorazepam & Clorazepate Antitrust Litig.*, 631 F.3d at 542 (court may drop parties to preserve jurisdiction and proceed with case if they are not indispensable).

**B.  Compliance with the Removal Statutes**

While the Court has concluded that it has diversity jurisdiction over the claims against Boston Scientific under section 1332 by virtue of the severance and remand of the claims against the Healthcare Provider Defendants pursuant to Federal Rule of Civil Procedure 21, the Court now considers Plaintiff's arguments that Boston Scientific did not properly comply with the substantive and procedural requirements of the removal statute. However, in light of the Court's conclusion above that the claims against the Healthcare Provider Defendants were improperly joined to the claims against Boston Scientific, little additional analysis is needed for the Court to

---

[7] The Court notes that other district courts have concluded that there is a basis for severing a party pursuant to Rule 21 in similar circumstances as presented here, where severing such a party would enable a federal court to exercise jurisdiction over the remaining claims and parties along with other actions transferred to a single district through the multi-district litigation process. *See, e.g., Sullivan v. Calvert Mem'l Hosp.*, No. CIV. PJM 15-1188, 2015 WL 4614467, at *5 (D. Md. July 30, 2015) (severing claims against healthcare provider defendants under Rule 21 and exercising jurisdiction over against product manufacturer).

determine that Boston Scientific has, in fact, complied with the applicable requirements of the removal statute.

First, Plaintiff argues that removal was improper under 28 U.S.C. § 1441 because the Healthcare Provider Defendants are citizens of the District of Columbia and because the forum defendant rule bars removal in these circumstances.[8] Pursuant to section 1441, "[a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title [the statutory basis for diversity jurisdiction] may not be removed if any of the parties in interest *properly joined* and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C § 1441(b)(2) (emphasis added). In her motion to remand, Plaintiff argues that the notice of removal is improper in light of this rule because the Healthcare Provider Defendants are "citizen[s] of the State in which such action is brought"—the District of Columbia. However, Plaintiff ignores a key element of the statutory provision—that it applies only to "parties in interest *properly joined* and served as defendants." *Id.* (emphasis added). Because the Healthcare Provider Defendants are not *properly joined* as defendants, as the Court determined above, the forum defendant rule is inapplicable and does not render the Notice of Removal improper.

Second, Plaintiff argues that removal was procedurally improper because the Healthcare Provider Defendants did not consent to the removal. Pursuant to section 1446, "[w]hen a civil action is removed solely under section 1441(a), all defendants who have been *properly joined* and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A)

---

[8] The Court notes that the weight of authority is that the forum defendant rule is a nonjurisdictional rule. *See Lively v. Wild Oats Markets, Inc.*, 456 F.3d 933, 940 (9th Cir. 2006) (agreeing with eight out of nine other Circuit Courts to have considered this issue and concluding that the forum defendant rule is nonjurisdictional).

(emphasis added). Once again Plaintiff ignores a key element of this statutory provision—that it applies only to "who have been *properly joined* and served." *Id.* (emphasis added). Because the Healthcare Provider Defendants are not properly joined as defendants, as the Court concluded above, the Court finds that the consent requirement is inapplicable and does not render the Notice of Removal improper.[9]

In sum, in light of the Court's conclusion that the Healthcare Provider Defendants were not properly joined to this action, the Notice of Removal was substantively and procedural proper. Having rejected Plaintiff's arguments that the claims against all of the defendants in this case must be remanded to the D.C. Superior Court, this Court concludes that it has jurisdiction over the claims against Boston Scientific.

---

[9] This interpretation of the consent requirement accords with the conclusions of other courts that have addressed the scope of the requirement. *See Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993) ("In cases involving alleged improper or fraudulent joinder of parties, however, application of this requirement to improperly or fraudulently joined parties would be nonsensical, as removal in those cases is based on the contention that no other proper defendant exists."); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988) ("Ordinarily, under 28 U.S.C. § 1446(a), all defendants in a state action must join in the petition for removal, except for nominal, unknown or fraudulently joined parties. … This general rule applies, however, only to defendants properly joined and served in the action.") (citations omitted). Some courts that addressed the scope of the consent requirement have described the exception in terms of *fraudulently* joined parties and have not discussed its applicability to *improperly* joined parties. *See, e.g.*, *Polyplastics, Inc. v. Transconex, Inc.*, 713 F.2d 875, 877 (1st Cir. 1983) ("A party fraudulently joined to defeat removal need not join in a removal petition, and is disregarded in determining diversity of citizenship."); *Balazik v. Cnty. of Dauphin*, 44 F.3d 209, 213 (3d Cir. 1995). However, the parties have identified no cases—and the Court is aware of no cases—where courts have explicitly determined that there is no exception to the consent requirement for improper joinder. In accordance with the authority from jurisdictions establishing an exception for improperly joined parties, the Court concludes that the explicit language of section 1446 does not require consent from improperly joined parties.

**C.  Remaining Issues**

The Healthcare Provider Defendants argue that the Court should consider their motion to dismiss prior to their motion to sever and remand. The Court disagrees. The Healthcare Provider Defendants' proposed sequencing would not be proper because the Court concluded above that it is necessary to resolve the motion to sever and remand in order to determine whether the Court has jurisdiction over this case in the first stance. Therefore, the Court only considered the Healthcare Providers Defendants' arguments in favor of dismissal in the context of the parties' fraudulent joinder arguments. Having concluded that there is no fraudulent joinder in this case and having concluded that it was necessary to sever the claims against the Healthcare Provider Defendants and remand them to the D.C. Superior Court in order to exercise jurisdiction over any claims in this case, it would be advisable to hold in abeyance and remand the Healthcare Provider Defendants' motion to dismiss as to the merits of this case.[10] Accordingly, the Court holds in abeyance and remands the Healthcare Provider Defendants' motion to dismiss.

Finally, the Court addresses Boston Scientific's [12] Motion to Stay all Proceedings Pending Transfer to MDL No. 2326, which seeks a stay in this action pending a decision by the Judicial Panel on Multi-District Litigation ("JPML" or "Panel") regarding the request to transfer this action to the Southern District of West Virginia as part of MDL No. 2326, captioned *In re Boston Scientific Corp. Pelvic Repair System Products Liability Litigation*. On August 4, 2015, the Panel issued a Conditional Transfer Order 149 ("CTO-149"), which would transfer this action to the Southern District of West Virginia. However, the Conditional Transfer Order with

---

[10] The Court notes, as it explained above, that although the Healthcare Provider Defendants frame their only argument applicable to all claims against them as a jurisdictional argument, the Court is not persuaded that those arguments are properly considered jurisdictional rather than merits-related.

respect to this action has remained stayed since it was issued because the Healthcare Provider

Defendants filed a Notice of Opposition and moved to vacate the Conditional Transfer Order.[11]

Boston Scientific has opposed the Healthcare Provider Defendants' motion to vacate. As of this

date, the Motion to Vacate remains pending before the Panel, and the Panel has scheduled a

hearing on that motion for December 3, 2015.

 After Boston Scientific filed the Motion to Stay, this Court issued an order with respect

the various motions that were pending in this case. The Court determined that it would not stay

the briefing of the several motions that had been filed—the motions that the Court resolves

today—but did not at that time resolve the Motion to Stay. As Boston Scientific has pointed out,

neither the Healthcare Provider Defendants nor Plaintiff has filed an opposition to the Motion to

Stay even though Plaintiff previously indicated her opposition and the Healthcare Provider

Defendants indicate that they opposed the Motion insofar as it would affect the Court's

consideration of the motions they filed. *See* Boston Scientific's Opp'n to Mot. to Remand at 3

n.1. Nonetheless, given the Healthcare Provider Defendants' motion to vacate the Conditional

Transfer Order that remains pending before the Panel, and given the jurisdictional issues that are

presented in this case, the Court concluded that would not be in the interest of judicial efficiency

to stay these proceedings *prior* to the resolution of the other motions pending before the Court.

However, having resolved those motions as explained above—severing and remanding the

claims against the Healthcare Provider Defendants such that this Court can exercise jurisdiction

over the claims against Boston Scientific—the Court concludes that a stay would now be proper.

---

[11] Plaintiff initially filed a Notice of Opposition to the Conditional Transfer Order, but because
that Notice was filed one day late, it was withdrawn.

Plaintiff does not dispute that there are thousands of cases pending against Boston Scientific through MDL 2326 that present similar claims to Plaintiff's claims. Having resolved the jurisdictional issues in this case, the Court concludes that it would be best to postpone any consideration of the claims against Boston Scientific—including allowing a period of discovery to commence—until the Panel's resolves the Motion to Vacate that is now pending. Not only are the questions regarding discovery in this case likely to be integrally linked to those issues considered by Judge Joseph R. Goodwin with respect to cases pending before him through MDL No. 2326, but the Court expects that it is likely that the Panel will promptly resolve the questions regarding the Conditional Transfer Order in light of this Court's resolution of the issues in this case. Specifically, given that the only Motion to Vacate pending before the Panel is the one filed by the Healthcare Provider Defendants, once the claims against them are remanded they would appear not to have any ground to object to a conditional transfer. Indeed, in their Motion to Sever and Remand, the Healthcare Provider Defendants indicated that, after the resolution of the motions pending before this Court, the "transfer of the claims against Boston Scientific to the pending multi-district litigation, is the course of action most likely to 'secure the just, speedy, and inexpensive determination of every action and proceeding.' " Mot. to Sever at 10. The Court expects that, after this resolution of the pending motions, that the claims against Boston Scientific will be transferred, with any remaining objections—given that Plaintiff did not file a timely objection to the Motion to Vacate before the Panel—to the Southern District of West Virginia. Accordingly, the Court will stay this action pending the resolution of the issues regarding the Conditional Transfer Order by the Panel on Multi-district Litigation.

## IV. CONCLUSION

For the foregoing reasons, the Court HOLDS IN ABEYANCE and REMANDS the Healthcare Provider Defendants' [8] Motion to Dismiss to allow the Superior Court to decide that motion; GRANTS the Health Care Provider Defendants' [11] Motion to Sever Claims Against Them and Remand Said Claims to D.C. Superior Court; and DENIES Plaintiff's [16] Motion to Remand the Case Back to the Superior Court of the District of Columbia. The Court SEVERS the defendants and claims against the Healthcare Provider Defendants, and REMANDS those defendants and claims back to the Superior Court. Having done so, the Court GRANTS Boston Scientific's [12] Motion to Stay All Proceedings Pending Transfer to MDL No. 2326 and STAYS this action until further order of the Court.

An appropriate Order accompanies this Memorandum Opinion.

Dated: October 22, 2015

＿＿＿＿＿＿/s/＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
COLLEEN KOLLAR-KOTELLY
United States District Judge
